# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

THOMAS K. THACKER,                :

                Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant.     :

Case No. 3:08-cv-135

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on February 10, 2005, alleging disability from June 30, 2004, due to Alzheimer's disease, sleep apnea, and low blood platelets. (Tr. 51-53; 61-67). Plaintiff's application was denied initially and on reconsideration. (Tr. 30-32; 34-36). A hearing was held before Administrative Law Judge Thaddeus Armstead, (Tr. 256-92), who determined that Plaintiff is not disabled. (Tr. 11-23). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Armstead's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Armstead found that Plaintiff has severe dementia and obstructive sleep apnea, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 17-19, ¶¶ 3, 4). Judge Armstead also found that Plaintiff has the residual functional capacity to perform the full exertional range of

work with the nonexertional limitations of no more than simple, repetitive tasks, no climbing ladders, ropes, or scaffolding, no balancing, no exposure to hazards, no driving in the work place, no production quotas, and no strict time standards. (Tr. 19-21, ¶ 5). Judge Armstead then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 21-22, ¶ 10). Judge Armstead concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 22).

Plaintiff has a history of severe obstructive sleep apnea syndrome which has been treated with a C-PAP machine. (Tr. 97-99).

Examining neuropsychologist Dr. Smith reported on November 23, 2004, that Plaintiff last worked in June, 2004, when the plant in which he worked closed, that he graduated from high school, and that he had additional training in architecture and drafting. (Tr. 100-09). Dr. Smith also reported that Plaintiff was well oriented, exhibited no behavioral disturbances, had a jovial affect, and that his verbal IQ was 87, his performance IQ was 86, and his full scale IQ was 86. *Id.* Dr. Smith reported further that Plaintiff read at the eighth grade level and performed arithmetic at the sixth grade level, that his performance on tasks requiring sustained attention was impaired, his information processing speed was slowed, and that his ability as to nonverbal reasoning was in the impaired range. *Id.* Dr. Smith noted that Plaintiff's overall performance on measures of neuropsychological functioning indicated a significant underlying neuropsychological dysfunction which appeared to be of a generalized nature and that it was difficult to suggest an underlying etiology for his dysfunction. *Id.* Dr. Smith identified Plaintiff's diagnosis as dementia not otherwise specified. *Id.*

4

On May 26, 2005, Plaintiff consulted with neurologist Dr. Sweeney at the Cleveland Clinic. (Tr. 137-40). Dr. Sweeney reported that Plaintiff was alert and oriented and obese and that his neurological exam was normal. *Id.* Dr. Sweeney also reported that Plaintiff's diagnosis was personality change, rule out other conditions. *Id.*

Plaintiff began receiving treatment from neurologist Dr. Vandersluis on December 2, 2004, at which time Dr. Vandersluis reported that Plaintiff's neuropsychological assessment suggested significant and diffuse cognitive dysfunction of generalized nature without associated depression, anxiety, or other psychopathology—dementia not otherwise specified. (Tr. 154-90). A December 16, 2004, EEG was normal. *Id.* On January 7, 2005, Dr. Vandersluis reported that an MRI revealed a hint of atrophy and he identified Plaintiff's diagnosis as young onset dementia. *Id.* Dr. Vandersluis reported on January 20, 2005, that Plaintiff's PET scan showed changes that might allow for early dementia. *Id.* On March 27, 2005, Dr. Vandersluis noted the results of Plaintiff's genetic testing and he reported that Plaintiff's diagnosis was Alzheimer's disease. *Id.*

Dr. Vandersluis noted on July 12, 2005, that Plaintiff had seen Dr. Sweeney for a second opinion, *see, supra,* and that Dr. Sweeney did not agree with the diagnosis of Alzheimer's disease. *Id.* Dr. Vandersluis reported on August 15, 2005, that Plaintiff had dementia that affected his judgment and information processing and that he should not be working. *Id.* Dr. Vandersluis also reported that Plaintiff previously worked in a factory operating a variety of machines, that they could be complex, and that if they were operated incorrectly it might put him or others in danger. *Id.* Dr. Vandersluis noted that he based his opinion in part on Plaintiff's abnormal spinal fluid studies, abnormal PET scan, and abnormal neuropsychological evaluation. *Id.*

On January 11, 2006, Dr. Vandersluis reported that Plaintiff had been his patient

5

since December, 2004, that he has had extensive testing demonstrating evidence of dementia, Alzheimer's type, that he had showed progression despite medication, that because of memory and judgment problems it was not suitable for him to participate in any form of work, and that he was accompanied at almost all times by his wife. *Id.* Dr. Vandersluis noted on May 10, 2006, that Plaintiff was alert and appropriate, had fair recall and stable language, and that his Alzheimer's and dementia were "holding for the moment". *Id.* Dr. Vandersluis also noted that Plaintiff still occasionally saw things that were not there. *Id.*

Treating physician Dr. Ginn reported on August 22, 2005, that he had been treating Plaintiff for over 15 years, that over the past 12-18 months, his mental faculties had deteriorated eventually leading to the diagnosis of Alzheimer's disease, and that he had symptoms of the condition including short-term memory loss, periods of confusion and "brain freeze", and increasing difficulty with activities of daily living. (Tr. 193). Dr. Ginn also reported that Plaintiff was unemployable. *Id.*

Plaintiff was re-evaluated for his sleep disorder and on September 6, 2006, Dr. Quadri reported that Plaintiff's current C-PAP pressure appeared to be fairly adequate and that his daytime fatigue and hypersomnolence appeared to be from his Alzheimer's and possibly depression. (Tr. 213). On November 6, 2006, Dr. Quadri reported that Plaintiff's Alzheimer's and sleep apnea prevented him from engaging in gainful employment . (Tr. 229).

Dr. Vandersluis noted on February 9, 2007, that Plaintiff's wife reported that Plaintiff had changes in behavior which included being irritable and having mood swings and that he was obsessed with aliens. (Tr. 242). On March 26, 2007, Dr. Vandersluis noted that Plaintiff's wife reported that his memory was worse and that occasionally he had a stumbling gait. (Tr. 240). Dr.

6

Vandersluis also noted that overall Plaintiff was "doing OK" although perhaps slightly progressive, and that his behavior seemed to be under relative control. *Id.*

Dr. Smith performed a neuropsychological evaluation and on September 4, 2007, and he reported that Plaintiff was alert, non-confused, and fully oriented during the evaluation, that his performance on the WAIS-III was essentially unchanged from his previous score obtained in October and November, 2004, and that the results of other tests suggested significant impairment in attentional function. (Tr. 244-55). Dr. Smith also reported that Plaintiff displayed mildly slurred speech which worsened with fatigue, that it appeared he had experienced significant psychoemotional problems since the last evaluation, that he continued to exhibit essentially the same profile of neuropsychological deficits as previously noted, and that he continued to have difficulties in the area of complex attention function, information processing speed, and learning and memory for new information. *Id.* Dr. Smith noted that Plaintiff exhibited some deterioration in nonverbal problem solving, continued to have functional abilities in the area of speech and language, continued to report depressed mood and boredom, and that significant psychoemotional distress, anxiety, and depression symptomatology continued to be reported and appeared to be significantly worse than they had been previously. *Id.* Dr. Smith identified Plaintiff's diagnoses as dementia NOS and adjustment disorder with mixed anxiety and depressed mood/chronic. *Id.* Dr. Smith opined that Plaintiff was significantly impaired, that he could not be competitively employed, and that there were concerns that he might not be able to safely operate a motor vehicle. *Id.* Dr. Smith also opined that Plaintiff's family should attempt to secure a supervised and more stimulating environment during the day for Plaintiff such as adult daycare and that Plaintiff and his wife continue to receive counseling. *Id.*

The medical advisor (MA) testified at the hearing that Plaintiff did not meet or equal the Listings, that he was limited to simple tasks with no high production quotas, no climbing ladders, ropes, or scaffolds, no moving machinery, no driving, and no unprotected heights. (Tr. 275-85).

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to give the appropriate evidentiary weight to his treating physicians' opinions, by failing to find that he is disabled by the combination of his impairments, and by failing to allow counsel to properly cross-examine the VE. (Doc. 6).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

8

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

Plaintiff's long-term treating physicians, specifically neurologist Dr. Vandersluis and Dr. Ginn, agree that Plaintiff is disabled. Those physicians' opinions are supported by examining neuropsychologist Dr. Smith's opinion and testing results[1]. In addition to being supported by Dr. Smith's testing results, Drs. Vandersluis' and Ginn's opinions are supported by other objective test results of record. For example, as Dr. Vandersluis noted, Plaintiff's spinal fluid test results as well as his PET scan results were abnormal. Finally, Dr. Smith's recommendation that Plaintiff enroll in a program such as adult daycare is inconsistent with an ability to perform substantial gainful activity and further supports Dr. Vandersluis' and Dr. Ginn's opinions. The only evidence which arguably conflicts with Plaintiff's treating physicians' opinions as well as Dr. Smith's opinion are the non-examining MA's and reviewing physicians' opinions. (Tr. 119-36). Under the facts of this case, the Commissioner erred by rejecting the opinions of treating physicians Dr. Vandersluis', Dr. Ginn's, as well as the opinion of examining neuropsychologist Dr. Smith. Therefore, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted.

---

[1] The Court notes that while Drs. Vandersluis and Ginn's opinions as to Plaintiff's diagnosis differ from Dr. Smith's opinion, those medical experts do agree that Plaintiff is disabled as a result of his impairment.

The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the factual issues have been resolved and that the record adequately supports a finding that Plaintiff is disabled and that he is entitled to benefits. Specifically, as noted above, Plaintiff's long-term treating physicians as well as examining neuropsychologist Dr. Smith have opined that Plaintiff is disabled and their opinions are supported by the objective medical tests of record as well as the neuropsychological test results. In contrast, the only opinions that oppose Drs. Vandersluis', Ginn's, and Smith's opinions are the opinions of the non-treating, non-examining physicians of record.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act be reversed. It is further recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

March 5, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).